IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

Case No. 2:25-CV-00017-M-RJ

| | | |
|---|---|---|
| TERRI CARTWRIGHT DAVIS,<br><br>Plaintiff,<br><br>v.<br><br>FRANK J. BISIGNANO,<br>*Commissioner of Social Security*,<br><br>Defendant. | ) | ORDER |

This matter comes before the court on the Plaintiff's brief in support of her request for review of the Commissioner's decision. DE 12. Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Robert B. Jones, Jr. issued a Memorandum and Recommendation ("M&R"), recommending that this court affirm the final decision of the Commissioner. DE 18. After de novo review of the contested findings in this case, the court finds that the ALJ made neither error alleged by Plaintiff, overrules Plaintiff's objections, and adopts the M&R in full.

## I. Standards of Review

A magistrate judge's recommendation carries no presumptive weight. When reviewing an M&R, this court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The court reviews uncontested portions of the M&R only for clear error, and need not give any explanation for adopting them. *Diamond v. Colonial Life & Acc. Ins. Co.,* 416 F.3d 310, 315 (4th Cir.2005); *Camby v. Davis,* 718 F.2d 198, 200 (4th Cir. 1983). Upon careful review of the record,

"the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

This court upholds a Social Security disability determination if "(1) the ALJ applied the correct legal standards and (2) substantial evidence supports the ALJ's factual findings." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." *Pearson v. Calvin*, 810 F.3d 204, 207 (4th Cir. 2015). Substantial evidence may "consist[] of more than a mere scintilla . . . but may be less than a preponderance." *Id.*

Though this court does not "reflexively rubber-stamp an ALJ's findings," it also does not "re-weigh conflicting evidence, make credibility determinations, or substitute its judgment" for the ALJ's. *Arakas*, 983 F.3d at 95. Rather, the court ensures the ALJ "'buil[t] an accurate and logical bridge' from the evidence to their conclusions." *Hultz v. Bisignano*, 162 F.4th 111, 120 (4th Cir. 2025) (quoting *Arakas*, 983 F.3d at 94); *see also Hunter v. Sullivan*, 993 F.3d 31, 34 (4th Cir. 1992) ("It is not [the reviewing court's] place either to weigh the evidence or to substitute our judgment for that of the Secretary if that decision was supported by substantial evidence."); *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997) (explaining that review focuses on whether the ALJ analyzed the relevant evidence and sufficiently explained his findings and rationale in crediting that evidence).

## II. Analysis

Plaintiff challenges Administrative Law Judge ("ALJ") William Andersen's decision to deny social security benefits. She alleges that the ALJ erred in two ways: (1) despite finding that Plaintiff's carpal tunnel syndrome was a severe impairment, he omitted a manipulative limitation from her residual functional capacity ("RFC"), and (2) despite finding that Plaintiff has moderate

limitations in four domains of mental functioning, he included no corresponding limitation in her RFC. DE 19 at 1, 3. After reviewing the record and the parties' briefings, Judge Jones found that substantial evidence supported the ALJ's determinations and recommended affirming the Commissioner's decision. DE 18 at 8, 13. Plaintiff filed timely objections on August 10, 2026. DE 19. Defendant has not responded, and the deadline to do so passed on August 24, 2026.

Plaintiff does not object to the following sections in the M&R: "Statement of the Case" (Part I), "Standard of Review" (Part II), "Disability Evaluation Process" (Part III), and "ALJ's Findings" (Part IV). Having found no clear error in those sections, the court adopts and incorporates them by reference.

**A. Plaintiff's First Objection**

Plaintiff objects to the ALJ imposing an RFC without manipulative limitations, despite finding at step two that her carpal tunnel syndrome was a severe impairment. *Id.* at 1. She alleges that, "in the absence of an adequate explanation of the discrepancy by the ALJ himself," the M&R offered an "impermissible post hoc rationale" for affirming the decision. *Id.* at 3.

In the social security context, the RFC is a claimant's capacity for work despite physical or mental limitations. 20 C.F.R. § 416.945(a)(l). The RFC assessment must "'first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis,'" including those functions listed in the Code of Federal Regulations.[1] *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting SSR 96-8p, 61 Fed.

[1] The listed functions are the claimant's (1) physical abilities, "such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching)"; (2) mental abilities, "such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting"; and (3) other work-related abilities affected by impairments "such as skin impairment(s), epilepsy, impairment(s) of

Reg. 34,474, 34,475 (July 2, 1996)). The ALJ must include "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting SSR 96-8p, 61 Fed. Reg. 34,474, 34,475 (July 2, 1996)); *see also Hultz*, 162 F.4th at 120 (an ALJ must "build an accurate and logical bridge" from the evidence to their conclusions) (quoting *Arakas*, 983 F.3d at 94).

The Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." *Mascio*, 780 F.3d at 636. Rather, remand "may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (citation omitted).

This court agrees with Magistrate Judge Jones that, while the ALJ's explanation "could have been better," substantial evidence supports the decision not to include a manipulative limitation related to carpal tunnel syndrome. DE 18 at 8 (citing *Little v. Kijakazi,* No. 5:22-CV-392-KS, 2023 WL 7018271 , at *3 (E.D.N.C. Oct. 25, 2023) (finding that "[w]hile the ALJ's explanation could have been better, there are several reasons why the decision permits meaningful review and satisfies the substantial evidence standard," including that the court was not left to guess about the ALJ's reasoning where it was apparent from the ALJ's discussion of the treatment notes and the ALJ did not "omit[] from consideration countervailing evidence relevant to the claimant's RFC.")); *see also Velazquez v. Saul*, No. 5:19-CV-151-KDB, 2020 WL 7049861, at *5–6 (W.D.N.C. December 1, 2020) ("[w]hile the ALJ's decision would have benefitted from a more thorough explanation of her reasoning, the ALJ's analysis is not so lacking that it prohibits

---

vision, hearing or other senses, and impairment(s) which impose environmental restrictions." 20 C.F.R. § 416.945(b)-(d).

meaningful review," because the ALJ summarized the evidence, described the weight given to medical opinions, and her determination was supported by discrepancies between claimant's reported daily activities and objective medical opinions). The record reflects that the ALJ carefully considered Plaintiff's specific history of carpal tunnel syndrome, amongst other conditions, and found that a manipulative or upper extremity limitation was not warranted.

The RFC states at the outset that Plaintiff can perform medium work as defined in 20 C.F.R. § 416.967(c). Tr. at 23. This includes in relevant part: "lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds," with only occasional climbing of ladders, moving mechanical parts, and operating a vehicle. 20 C.F.R. § 416.967(c). The ALJ gave a detailed summary of medical records relevant to Plaintiff's carpal tunnel syndrome, amongst other conditions. Tr. at 24–25. For example, the ALJ noted that Plaintiff was undergoing treatment in the form of wrist braces in February 2021. *Id.* at 24, 1237. However, two months later, a nerve conduction study showed mild to moderate symptoms in her right wrist, and a "very mild" median neuropathy on the left. *Id.* at 24, 1299. During physical exams at the same time, Plaintiff exhibited 5/5 strength and "normal movement" in her upper extremities. *Id.* at 24, 869, 1098. Despite impaired sensation in her right thumb, Plaintiff also had normal reflexes in her hands. *Id.* at 24, 1299.

To assess Plaintiff's RFC, the ALJ used "this evidence" and the "findings of [two] State agency (DDS) physician consultants," both of whom concluded in 2021 that Plaintiff was capable of medium exertion.[2] *Id.* at 25. The ALJ also noted that, "due to possible effects" of Plaintiff's

[2] "Substantial evidence takes into account the entire record, and not just the evidence cited by the ALJ." *Connie J. v. Comm'r of Soc. Sec.*, No. 4:18-CV-59, 2020 WL 2814181, at *1 (W.D. Va. May 14, 2020) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951); *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984)). This court observes that, at an April 2021 follow-up appointment to the nerve conduction study, Plaintiff indicated she would "like to try to manage

other conditions and "carpal tunnel syndrome affecting her wrists and hands . . . it may be dangerous for her to *frequently*" do tasks like climbing ladders and operating a vehicle. *Id.* (emphasis added).

The court finds that substantial evidence supports the ALJ's determinations in this case, and that the ALJ sufficiently explained why a manipulative limitation was not warranted. After summarizing the relevant medical evidence, the ALJ observed that "despite [Plaintiff's] allegations of pain and weakness attributed" to her conditions, "she has generally maintained normal musculoskeletal ranges of motion with intact sensation and reflexes, full 5/5 strength throughout, and a normal gait." *Id.* This was an accurate description of the record. The ALJ also considered whether Plaintiff could "frequently" do tasks like climbing and driving, as opposed to only "occasional" performance. *Id.* The ALJ concluded that "frequent" performance was unsafe for Plaintiff because of her carpal tunnel syndrome and other conditions. *Id.* Therefore, medium exertion was appropriate. *Id.* Two DDS physician consultants shared this opinion. *Id.*

There was no explicit function-by-function outline as to why a manipulative limitation was omitted, but the ALJ was not required to provide one. *See Mascio*, 780 F.3d at 636. This court does not need to "fill in" logical blanks in the ALJ's reasoning, as Plaintiff suggests, to a level that precludes meaningful review. DE 19 at 3. Rather, the record shows that the ALJ fully considered the evidence for and against a manipulative limitation. The court finds that the ALJ did not err by omitting one.

---

this mild to moderate carpal tunnel syndrome," and that "if her symptoms worsen[ed] she [would] consider formal therapy or referral to discuss surgical management. Tr. at 1530. However, there is no evidence that Plaintiff sought additional or more formal treatment for her carpal tunnel syndrome past this date.

**B. Plaintiff's Second Objection**

The court next considers the alleged lack of mental functioning limitations in Plaintiff's RFC. Plaintiff points out that the ALJ adopted "moderate limitations with regard to concentrating, persisting, or maintaining pace, and in interacting with others" at step three. Tr. at 22–23. The RFC then found Plaintiff capable of unskilled work "with no more than occasional interaction with supervisors, co-workers, and the general public, and with time off task accommodated by normal breaks." *Id.* at 23. Plaintiff argues that the ALJ failed to explain this discrepancy, which the M&R then "swept under the rug." DE 19 at 4. This court disagrees.

There is no per se rule that all moderate limitations in concentration, persistence, or pace ("CPP") must have a corresponding limitation in the RFC. *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020). An ALJ cannot "summarily 'account for a claimant's limitations in concentration, persistence, and pace by restricting the [RFC] to simple, routine tasks.'" *Id.* (quoting *Mascio*, 780 F.3d at 638). However, "when medical evidence demonstrates" that a claimant can perform unskilled work despite CPP limitations, "'courts have concluded that limiting the hypothetical to include unskilled work sufficiently accounts for such limitations.'" *Id.* (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). In these circumstances, the ALJ can explain why moderate CPP limitations do not translate to a more specific limitation in the RFC. *See id.* (citing *Mascio,* 780 F.3d at 638). "For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect the claimant's ability to work." *Id.* (quoting *Mascio*, 780 F.3d at 638) (cleaned up).

Numerous courts in the Fourth Circuit have found that limiting claimants to simple or routine tasks with normal breaks accounts for moderate CPP limitations. *See*, *e.g.*, *Buckner v. Saul*, No. 1:20-CV-2-FDW, 2021 WL 467204, at *3 (W.D.N.C. January 26, 2023) ("The ALJ

limited Plaintiff to an RFC of 'simple, routine, and repetitive tasks' for two-hour segments at a time which directly accounts for his limitations in concentration, persistence, and pace"); *Moore v. Bisignano*, No. 4:24-CV-00076-M-RN, 2025 WL 1905344, at *2 (E.D.N.C. July 10, 2025) (collecting cases). "Normal breaks" in a workday occur at two-hour intervals. *See* SSR 96-9P, 1996 WL 374185 (July 2, 1996), at *6 (noting that a normal workday includes a morning break, a lunch period, and an afternoon break at approximately two-hour intervals); *Ian B. v. Kijakazi*, No. 22-CV-2486-BAH, 2023 WL 5608005, at *3 (D. Md. August 30, 2023) (citing SSR 96-9P "for the proposition that" a normal workday has two hour intervals with a morning break, lunch period, and afternoon break). An RFC with normal breaks therefore has the same effect as an RFC with a two-hour work increment limitation.

Plaintiff's RFC mirrors those cited above. The ALJ determined that she can perform "unskilled work" consisting of "simple, routine, repetitive, tasks," with normal breaks (i.e., breaks in two hours increments). Tr. at 23, 27–28. This accounts for her moderate CPP limitations. The ALJ imposed an additional limitation of only "occasional" interactions with coworkers and the public. *Id.* at 23. This accounts for Plaintiff's moderate mental limitation in interacting with others. These limitations conform with the ALJ's impressions of the overall record and with medical opinions on Plaintiff's working capacity, all of which the ALJ discussed at length. *See id.* at 25–28. The court finds there is substantial evidence for the limitations in Plaintiff's mental RFC, and that the ALJ adequately explained his rationale for imposing them.

The ALJ began by discussing mental evaluations of Plaintiff from 2018 to 2023. *See id.* He noted that since high school, Plaintiff had undergone treatment for anxiety, PTSD, and ADHD. *Id.* at 26. She reported anxiety attacks, memory problems, and an inability to follow directions. *See id.* at 26–27. She also indicated in a November 2020 Function Report that she needed

reminders to care for her personal needs and did not get along with others. *Id.* at 27, 327, 334.

On the other hand, Plaintiff's mood and affect remained "appropriate or normal" during evaluations from 2020 to 2023. *Id.* at 26. For example, Plaintiff appeared "well-groomed, calm, cooperative, and pleasant with clear speech, and . . . maintained eye contact" at a May 2023 exam by licensed counselor Amanda Park. *Id.* at 27, 1740. During an exam by Janice McGilberry, M.S. in 2020, McGilberry noted that Plaintiff's "mood and affect were unremarkable with clear speech," and that she exhibited "adequate hygiene and grooming, normal motor activity, normal thought processes and thought content, and no difficulties with impulse control." *Id.* at 27, 843. The ALJ further noted that the formal diagnosis of ADHD from 2019 was not repeated. *Id.* at 27. In the November 2020 Function Report, Plaintiff also reported that she could perform routine household chores, drive, shop, read, watch television, and spend time with others weekly. *Id.* at 27, 328, 334. Plaintiff testified at the administrative hearing that she had taken college-level courses, lived with her best friend and daughter, drove to see friends approximately twice per week, and drank socially on the weekends. *Id.* at 27, 48–49, 66.

The ALJ concluded from this evidence that Plaintiff exhibited moderate mental limitations and could perform unskilled work with only occasional workplace interactions. *Id.* at 27. Importantly, the ALJ discussed three medical opinions in light of this conclusion. First, the ALJ agreed with DDS psychological consultant Jennifer Fulmer, Ph.D., that Plaintiff was capable of simple work, with moderate limitations on interacting with others and in responding to changes in a routine work setting. *Id.* However, the ALJ disagreed with Fulmer's finding that Plaintiff had "only mild" limitations in interacting with others. *Id.* The ALJ stated that mild limitations were inconsistent with Fulmer's prior finding that Plaintiff had moderate limitations in workplace interactions. *Id.*

The ALJ next agreed with the finding of DDS psychological consultant Brett Fox, Psy.D., that Plaintiff could perform simple, routine tasks in a stable or less-demanding setting, with moderate limitations in workplace interactions. *Id.* at 28. However, the ALJ found more severe limitations than Dr. Fox did on following instructions and responding to feedback. *Id.* The ALJ also reiterated his own finding that Plaintiff had normal intellectual functioning and intact memory from objective evaluations and activities reports. *Id.*

The ALJ then agreed with McGilberry's December 2020 opinion that Plaintiff could understand, retain, and follow instructions to perform simple, routine tasks and maintain concentration, persistence, and pace. *Id.* The ALJ noted that McGilberry's findings were supported by her own objective evaluations of Plaintiff. *Id.* However, the ALJ disagreed with McGilberry that Plaintiff "would not have any difficulty interacting with peers" because it was not consistent with the "overall medical evidence, discussed above." *Id.*

Based on the ALJ's thorough analysis of the record, this court is persuaded that the ALJ appropriately determined Plaintiff's mental RFC. The ALJ considered the relevant evidence with care, which is especially clear from the discussion of the medical opinions. At times, the ALJ adopted a more favorable position for Plaintiff than the practitioners did. Indeed, the ALJ disagreed with both Dr. Fulmer and McGilberry that Plaintiff had no issues interacting with others. *Id.* at 27–28. That disagreement is evident in his decision to limit Plaintiff to "occasional" workplace interactions.

Plaintiff cites *Linger v. Commissioner of Social Security* for the proposition that "'meaningful review' is precluded when 'uncertainty remains' in the context of an ALJ who assessed moderate mental limitations at step three that were not adequately accommodated by the RFC." DE 19 at 5 (citing 2025 WL 40548, at *3–5 (4th Cir. Jan. 7, 2025)). However, *Linger* is

distinguishable from Plaintiff's case in several respects.

First, Linger was a differently situated claimant. Linger had a 0.4 percentile Full-Scale IQ, with fourth-grade reading and spelling levels and a second-grade math level. *Id.* at *2. He was diagnosed with borderline intellectual functioning and moderate limitations in mental functioning. *Id.* Two psychologists, Doctors Goudy and McCullough, independently concluded that Linger had "marked limitations" in concentrating, persisting, and maintaining pace, and in understanding, remembering, and applying information. *Id.* Both noted that he had an overall inability to articulate and referred to his IQ score of 60 and elementary education levels in their opinions. *Id.* Despite Goudy and McCullough's findings, the ALJ in that case imposed moderate or mild mental limitations across the board. *Id.* at *4. The ALJ therefore contradicted the findings of both practitioners. The *Linger* opinion correctly noted that the ALJ "gave too little weight to the opinions of doctors Goudy and McCullough." *Id.* at *1.

Here, three separate psychological examiners found that Plaintiff can perform simple, routine tasks and maintain concentration and pace throughout. *See* Tr. at 27–28. Doctors Fulmer and Fox specifically found that Plaintiff has moderate CPP limitations. *Id.* The ALJ aligned with all three examiners when he imposed the exact same moderate limitations, plus a moderate limitation on interacting with others, for Plaintiff's RFC. *Id.* at 23. This court again observes that the ALJ could have given more weight to two medical opinions that Plaintiff should have no limitations in workplace interactions. However, the ALJ chose not to do so because it contradicted the overall record. *Id.* at 28.

The ALJ also adequately explained these limitations. He formed and discussed his own impressions of the overall mental health record, balancing both objective and subjective evidence of Plaintiff's capabilities. *Id.* at 25–27. He credited the opinions of all three practitioners that

Plaintiff could engage in simple work, adapt, and keep pace appropriately. *Id.* at 27–28. He then credited the opinion of Dr. Fox that Plaintiff should have moderate limitations in interacting with others. *Id.* at 28. The court concludes that there is substantial evidence for the unskilled work and interpersonal limitations in Plaintiff's RFC, and that the ALJ gave a sufficient explanation for imposing them.

## III. Conclusion

A district court does not "re-weigh conflicting evidence, make credibility determinations, or substitute its judgment" for the ALJ's. *Arakas*, 983 F.3d at 95. Rather, the court will "sustain the ALJ's decision . . . provided the determination is supported by substantial evidence." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court.") (citations omitted).

Having reviewed Plaintiff's objections and the record de novo, the court (1) ADOPTS the M&R [DE 18], (2) OVERRULES Plaintiff's objections [DE 19], and (3) AFFIRMS the decision of the Commissioner of the Social Security Administration. The Clerk of Court is DIRECTED to enter judgment in favor of Defendant, forward a copy of this order to Plaintiff and all counsel of record, and close this case.

SO ORDERED this 26th day of October, 2026.

Richard E Myers II

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE